**In re JUIL, INCORPORATED, Debtor.**

**PARIS FOODS CORP., Plaintiff,**

**v.**

**Emmanuel TOPAKAS a/k/a Manny Topakas, Defendant.**

**Bankruptcy No. 81–03572K.**
**Adv. No. 82–2020K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 28, 1985.

---

Joseph N. Grines, Langhorne, Pa., Former Counsel for defendant.

James J. O'Connell, trustee.

Paul M. Lewis, Philadelphia, Pa., for plaintiff.

Timothy R. Smith, Yardley, Pa., for debtor.

Simon J. Rosen, Philadelphia, Pa., for defendant.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

A motion to vacate a judgment is before the Court for consideration. For the reasons stated herein, we will grant the motion.

The facts relevant to our decision are as follows: [1]

Juil, Inc. ("Juil") is a debtor in a Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania. A petition under Chapter 11 of the Bankruptcy Code was filed by Juil on September 4, 1981. On October 29, 1981, the case was converted to a case under Chapter 7 and an Interim Trustee was appointed.

Prior to the commencement of the case, Juil operated a restaurant at Route 13 and Beaver Dam Road in Bristol, Pennsylvania. The trade name of the restaurant was the Philip Arthur Restaurant. Juil leased the building and the real estate upon which the restaurant was located from the estate of Francis O'Boyle.

In 1980, Juil entered into a security agreement with Paris Foods Corporation ("plaintiff") for the purpose of remodeling the building. The plaintiff extended credit to Juil in the amount of $150,000.00, of which $130,000.00 was applied toward the purchase of restaurant equipment, and $20,000.00 was applied toward plumbing, electrical, and carpentry services.

Juil granted the plaintiff a purchase money security interest in all of the personal property of Juil, including the restaurant equipment and fixtures. The security interest was duly perfected by the filing of a Uniform Commercial Code financing statement with the Secretary of the Commonwealth of Pennsylvania on or about February 26, 1981, and with the Prothonotary of Bucks County on or about February 11, 1981.

Sometime after the filing of the bankruptcy petition, the restaurant closed. In March, 1982, the defendant in this proceeding [2] purchased the land and the building from the estate of Francis O'Boyle. In addition to purchasing the real property and the building, the defendant received a bill of sale for the personal property in the restaurant.

On April 23, 1982, the defendant received a letter from counsel representing the Trustee of Juil, which demanded that all of the personal property located in the restaurant be turned over to the Trustee. Counsel for the defendant, Joseph Grines, Esquire, responded to the letter on May 3, 1982, requesting that the Trustee specify which items of property were being claimed. Mr. Grines again wrote to counsel for the Trustee on May 20, 1982, informing him that it was the defendant's intention to dispose of much of the personal property in the restaurant.

On August 17, 1982, the plaintiff filed a complaint for a temporary restraining order and preliminary injunction against the defendant. The complaint sought the following relief: (1) issuance of a temporary restraining order and preliminary injunction against the defendant enjoining him from removing or disposing of any of the restaurant equipment or fixtures which were located on the real estate premises and were subject to the security interest of the plaintiff; (2) that the defendant account for the whereabouts and disposition of any such property removed by the defendant

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

2. Although the adversary complaint filed by the plaintiff is captioned Paris Foods Corp., Plaintiff, v. Emmanuel Topakas a/k/a Manny Topakas, Defendant, apparently Manny Topakas and Emmanuel Topakas are two (2) different individuals. It is Manny Topakas who has personally appeared and testified in this proceeding, who has been represented by counsel, and who has moved to vacate the judgment.

from the premises; (3) the entry of a money judgment against the defendant for the value of any property subject to the security interest of the plaintiff which was disposed of by the defendant and (4) reasonable attorneys' fees and costs.

A Temporary Restraining Order ("TRO") was issued on August 17, 1982. The defendant was personally served with the TRO and a copy of the complaint on August 18, 1982.

On September 7, 1982, a preliminary injunction was entered against the defendant, but we did not rule on the issue of a money judgment. Trial on the complaint occurred on June 15, 1983. At the trial, it was clear that there was a significant factual dispute as to which items of property were covered by the security interest of the plaintiff. At the close of the trial, the defendant's counsel, in the presence of the defendant, agreed to file an accounting as to each item contained in the plaintiff's U.C.C. financing statement. We entered an Order directing the defendant to file an accounting with the Court and serve it upon counsel for the plaintiff on or before June 24, 1983.

The defendant failed to file an accounting on the date ordered. On July 13, 1983, counsel for the plaintiff filed a motion to compel the accounting. A copy of the motion was served upon defendant's counsel, Mr. Grines, at 344 South Bellevue Avenue, Langhorne, Pennsylvania.

On July 14, 1983, the Court granted the plaintiff's motion and ordered that the defendant file an accounting no later than July 25, 1983. A copy of this Order was sent to Mr. Grines on July 18, 1983.

The defendant again failed to file an accounting, and on July 28, 1983, the plaintiff filed a motion for sanctions, which sought the entry of a judgment. A copy of the motion was forwarded to defendant's counsel, Mr. Grines, on July 28, 1983.

On August 16, 1983, an Order to Show Cause Why The Motion for Sanctions should not be granted was entered by the Court scheduling a hearing on the motion for August 30, 1983. A copy of this Order was sent to defendant's counsel on August 17, 1983.

On August 30, 1983, neither the defendant nor his counsel appeared for the hearing on the motion for sanctions. The Court granted the plaintiff's motion and entered judgment by default against the defendant in the amount of $130,000.00.[3] A copy of the Order granting judgment was sent to defendant's counsel on August 30, 1983.

No further action was taken by either party until January 3, 1984, when the plaintiff filed the judgment obtained in this Court with the Court of Common Pleas of Bucks County. In late March of 1984, the defendant retained new counsel to represent him in this matter. On April 14, 1984, Simon Jeffrey Rosen, Esquire, from the Law Office of Milton H.L. Schwartz filed a motion to vacate the judgment on behalf of the defendant. A hearing on the motion was held on August 30, 1984, at which time we held the matter under advisement. The defendant filed an accounting and a memorandum of law in support of his motion to vacate judgment on the same day as the hearing. Proposed findings of fact and conclusions of law were subsequently filed by both parties.

## DISCUSSION

The defendant has moved to vacate the default judgment entered in this proceeding pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, applicable to this proceeding through Bankruptcy Rule 9024.

Fed.R.Civ.P. 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly

---

**3.** A judgment of $130,000.00 was entered because this was the original value of the items purchased by the owner of Juil, Mr. Philip

Guarno, with the funds advanced by the plaintiff.

discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic); misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

It is the defendant's contention that he was never served with notice of any of the proceedings which led up to the entry of the default judgment by this Court, nor was he personally served with notice of the default judgment entered on August 30, 1983; therefore, the judgment should be set aside.

As a preliminary matter, the plaintiff asserts that the judgment entered against the defendant in this proceeding is not a "classic" default judgment, thus, the equities normally considered by a trial court judge in deciding whether to set aside a default are not applicable here. The plaintiff points out that two (2) evidentiary hearings on the matter have already been held, at which the defendant personally appeared and presented evidence.

■ We are not persuaded by the plaintiff's argument that the judgment entered was not technically a default judgment. The Order entered by this Court on August 30, 1983 explicitly states that a "default judgment" is being entered "upon Defendant's failure to appear". Moreover, the Order was entered pursuant to a motion for sanctions. The entry of a default judgment or the dismissal of an action with prejudice necessarily preclude a decision on the merits of the case. Therefore, we will treat the defendant's motion as a motion to set aside a default judgment, regardless of the fact that the judgment was entered at a point in the proceeding when the defendant had already appeared and presented evidence.

In the briefs filed with this Court, neither party has identified the appropriate standard in the Third Circuit for the setting aside of default judgments.

■ In this Circuit, it is well established that a trial court ruling on a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1), must consider the following three (3) factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984); *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 122 (3d Cir.1983); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir.1982); *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir.1982). *See also Penn Screw & Machine Works, Inc. v. Fastener Brokerage, Inc.* (In re Penn Screw & Mach. Works, Inc.), 48 B.R. 138 (Bankr.E.D.Pa.1985).

We turn now to an examination of each of the three (3) factors.

*A. Meritorious Defense*

■ The threshold issue in opening a default judgment is whether a meritorious defense has been asserted. *Hritz*, 732 F.2d at 1181. A meritorious defense is presumptively established when the "allegations of defendant's answer, if established on trial would constitute a complete defense to the action." *Id.* This is the critical issue because without a meritorious defense, the defendant could not win at trial. There would be no point in setting aside the default judgment if the defendant cannot demonstrate the possibility of winning. *$55,518.05 In U.S. Currency*, 782 F.2d at 195.

■ In the adversary proceeding before the Court, no answer was filed by the defendant prior to the entry of judgment. However, the parties stipulated at the trial on the complaint on June 15, 1983, that had an answer been filed to the complaint, it would have raised questions of title to the personal property which was listed in Exhibit P-1, and questions of the priority of interests in such property.

At the conclusion of the trial on June 15, 1983, we held the matter under advisement and directed the parties to file proposed findings of fact, conclusions of law, and memoranda of law on the issues raised.

Basically, the plaintiff asserts that its security interest covered all of the personal property of Juil and that this property, with the exception of a few items, remained in the restaurant up until and including the time when the defendant took possession of the premises. The plaintiff claims that the defendant removed property belonging to the plaintiff from the premises; therefore, the plaintiff sought a money judgment, in addition to injunctive relief, for the value of the property removed by the defendant after he took possession of the premises.

The defendant, however, argues that many items of property which were listed in the financing statement of the plaintiff were not in the restaurant when he purchased it.

The defendant further claims that the plaintiff's security interest was no longer perfected as to some of the items of personal property claimed by the plaintiff. According to the defendant's counsel, Mr. Grines, some of the more valuable items of property became affixed to the real property so that, at the time the defendant purchased the restaurant, those items were "fixtures" under Pennsylvania law.[4]

If the Court finds that the items in question became fixtures under Pennsylvania law, then we would have to determine whether the rights of the plaintiff were subordinate to the rights of the defendant under Pennsylvania fixture law.[5]

Finally, the defendant argues that he has offered to allow the plaintiff to remove the property from the premises and the plaintiff has not done so. The defendant maintains that replevin, rather than a money judgment, is the appropriate remedy in this matter.

Upon consideration of the arguments raised by the defendant, we find that a meritorious defense has been established.

## B. Prejudice to the Plaintiff

■ The degree of prejudice to the plaintiff caused by the opening of a default judgment is the second factor which the Court must consider. Loss of valuable evi-

---

4. Under Pennsylvania commercial law, goods are "fixtures" when they become so related to particular real estate that an interest in them arises under real estate law. 13 Pa.Cons.Stat. Ann. § 9313(a) (Purdon 1980).

5. The section governing priority of security interests in fixtures is 13 Pa.Cons.Stat.Ann. § 9313, which provides in part:

(d) Priority of perfected security interest in fixtures.—A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where:

(1) the security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within ten days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate.

(e) Priority of security interest in fixtures whether or not perfected.—A security interest in fixtures, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real estate where:

(1) the encumbrancer or owner has consented in writing to the security interest or has disclaimed an interest in the goods as fixtures; or

(2) the debtor has a right to remove the goods as against the encumbrancer or owner. If the right of the debtor terminates, the priority of the security interest continues for a reasonable time.

(g) Subordination to encumbrancer or owner who is not the debtor.—In cases not within subsections (a) through (f), a security interest in fixtures is subordinate to the conflicting interest of an encumbrancer or owner of the related real estate who is not the debtor.

dence, increased potential for fraud or collusion, or substantial reliance upon the judgment may support a finding of prejudice sufficient to prevent the opening of a default judgment. *See General Tire & Rubber Co. v. Olympic Gardens, Inc.,* 85 F.R.D. 66, 70 (E.D.Pa.1979); Restatement (Second) of Judgments § 74 (1982). On the other hand, delay experienced by a plaintiff in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment. *Feliciano,* 691 F.2d at 657. Nor are the financial costs of the plaintiff associated with the enforcement of a judgment, which is later vacated, considered to be sufficient prejudice to the non-defaulting party. *Id.* at 656.

On the issue of prejudice, the plaintiff in this matter argues that if the defendant had filed his accounting when ordered to do so, and notified the plaintiff which items of equipment were absent from the restaurant premises, the plaintiff would have been in a "far better position to trace the facts concerning such equipment."

It is undisputed that the plaintiff was in a better position to trace the items covered by its security agreement when this action was first instituted. However, the plaintiff has not stated that it is now impossible to do so. Much of this action will be decided on the evidence already received at the prior hearings. Moreover, we cannot attribute the delay involved in the filing of the motion to vacate entirely to the defendant. The plaintiff did not attempt to execute on the judgment until January, 1984, four (4) months after the judgment was entered. The defendant filed the motion to vacate the judgment in April, 1984, after retaining new counsel. The filing of the motion was within the one (1) year limitation allowed by Fed.R.Civ.P. 60(b).

Upon consideration of the facts presented, we do not find the degree of prejudice to the plaintiff which may result from the opening of this judgment sufficient to justify a denial of the relief requested.

## C. Culpable Conduct

Under *Hritz, Feliciano* and *Gross,* the standard for "culpable conduct" in this Circuit is the "willfulness" or "bad faith" of a non-responding defendant. The words "willfulness" and "bad faith" are not talismanic incantations which alone resolve the issue. They are terms used by the Court of Appeals to express that Court's preference for avoiding default judgments where the circumstances do not justify such a result. *Hritz,* 723 F.2d at 1183. The Court of Appeals has repeatedly stated its preference that cases be disposed of on the merits whenever practicable. *Id.,* at 1181; *$55,518.05 in U.S. Currency,* 728 F.2d at 195; *Gross,* 700 F.2d at 122; *Feliciano,* 691 F.2d at 656; *Farnese,* 687 F.2d at 764. This Circuit does not favor defaults. In a close case, doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits. *Farnese,* 687 F.2d at 764.

Appropriate application of the culpable conduct standard requires that as a threshold matter, more than mere negligence of the defaulting party must be demonstrated. Neglect alone cannot sustain a default judgment. "Willfulness" and "bad faith" include acts intentionally designed to avoid compliance with court notices. *Hritz,* 732 F.2d at 1183.

The reported decisions of the Third Circuit over the past few years have consistently emphasized the extreme nature of a dismissal with prejudice or a default judgment. *See e.g., Eash v. Riggins Trucking, Inc.,* 757 F.2d 557 (3d Cir.1985); *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 867 (3d Cir.1984) ("we reiterate what we have said on numerous occasions: that dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court, *National Hockey League* [*v. Metropolitan Hockey Club, Inc.* ], 427 U.S. [639] at 643, 96 S.Ct. [2778] at 2781 [49 L.Ed.2d 747] and are to be reserved for comparable cases."). The Court of Appeals, in these decisions, cautions the trial court to balance the following facts *inter alia* in determining whether

to dismiss a case or open a default judgment: (1) the extent of the party's personal responsibility as opposed to that of his or her counsel; and (2) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions.[6]

In the *National Hockey League* case, the Supreme Court upheld the "extreme sanction of dismissal" after noting that there had been "flagrant bad faith" on the part of the plaintiffs as well as "callous disregard" by counsel of their responsibilities. 427 U.S. at 643, 96 S.Ct. 2778. However, in cases where there is no bad faith evidence on the part of a litigant, this Circuit has noted its reluctance to penalize an innocent litigant for the misdeeds of counsel: "The imposition of a modest monetary sanction on counsel is obviously considerably less severe than outright dismissal of an action, and is perhaps more appropriate in that the penalty is directed at the lawyer responsible for the infraction, rather than the litigant who may be completely innocent." *Eash*, 757 F.2d at 567.

In applying these principles to the facts before us, we find that the defendant's conduct falls short of being the type of willful conduct necessary to sustain a default judgment. The defendant was present at the June 15, 1983 hearing when it was agreed that an accounting would be filed by June 24th. Therefore, he had knowledge of the Court's Order in this regard. However, he claims that he was under the impression from that hearing that before the accounting was to be filed, counsel for the plaintiff was to supply his counsel, Mr. Grines, with certain information. According to the defendant, he made repeated inquiries with his counsel between June 15th and August 30th regarding the filing of the accounting.

The defendant further claims that he never received notice of the Order directing the filing of the accounting, the motion for sanctions, the Order to show cause, or the Order entering judgment by default, and that his counsel never advised him of the entry of these Orders. While the record is clear that copies of these Orders were sent to Mr. Grines, there is no indication that they were ever sent to the defendant personally. Therefore, we cannot find on the facts before us that the defendant's conduct was culpable, even though the conduct of his counsel may have been.[7]

In conclusion, we are convinced that this matter presents an appropriate set of circumstances for the setting aside of the default judgment in favor of a decision on the merits. We will enter an order vacating the judgment and directing the parties to appear for a status hearing on the procedural posture of this action.

---

6. Under the Federal Rules of Civil Procedure, the district court is specifically authorized to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders. *See* Fed.R.Civ.P. 16(f), 37(a)(4), 37(b), 37(d) and 37(g). *See also* 28 U.S.C. § 1927. Fed.R.Civ.P. 37 is applicable to this proceeding through Bankruptcy Rule 7037.

7. In retrospect, it appears that the appropriate sanction would have been the imposition of fines on counsel, rather than the entry of a default judgment.