### In re UNITED MINERALS AND GRAINS CORP., Debtor.

**ALLENTOWN CEMENT CO., INC., A.C. C. Investment Co., Inc., and Chester Cement Co., Inc., Plaintiffs,**

**v.**

**HONG SUNG INDUSTRIES CO., LTD., Hong Sung Industries of America, Inc., Sung Park, a/k/a Sung Suk Park, Suhkee Park, His Wife, and Korea Exchange Bank Kwangju Branch a/k/a Korean Exchange Bank and Korean National Bank, Defendants,**

**and**

**Zanperozan Shipping Company and Perosea Shipping Company, Intervening Defendants as to Counts I and II.**

**Bankruptcy No. 86–00877K.
Adv. No. 87–0155S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 14, 1987.

Sam L. Warshower, Jr., Phila., Pa., for plaintiffs.

Gretchen Santamour, Lesser & Kaplin, Blue Bell, Pa., formerly counsel for defendants.

Robert Lapowsky, Rubin, Quinn & Moss, Gary Schildhorn, Adelman, Lavine, Gold &

Levin, Philadelphia, Pa., for Creditors' Committee.

Mary Elisa Reeves, Krusen, Evans & Byrne, Philadelphia, Pa., for interveners.

Allen B. Dubroff, Pincus, Verlin, Hahn & Reich, Philadelphia, Pa., for debtors.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

We have occasion here to discuss the standards set forth in Federal Rule of Civil Procedure (hereinafter referred to as "F.R. Civ.P.") 24 for determining whether intervention should be allowed. We believe that proper interpretation of the Rule requires both a practical and permissive approach. Considering the foregoing and all of the relevant factors, we are discounting the procedural shortcomings by the Movants and the fact that they did not proceed with an impressive degree of vigilance, and focus instead upon whether the Movants have a sufficient interest in, or a commonality with, the issues in question and whether their interests will be unprotected if the motion is denied. Finding such an interest or commonality and no protection for same unless we grant the motion, we proceed to allow it.

The underlying voluntary Chapter 11 bankruptcy case was filed by the Debtor, UNITED MINERALS AND GRAINS CORP., on February 24, 1986. The principal of the Debtor at the time of filing was one Sung Suk Park (hereinafter referred to as "Park"), who is also alleged to be the principal of a corporation known as Hong Sung Industries of America, Inc. (hereinafter referred to as "Hong Sung America"). Hong Sung America is apparently a subsidiary of a Hong Sung Industries Co., Ltd., a Korean corporation (hereinafter referred to as "Hong Sung Korea").

Since May, 1986, when it attempted to shorten the Debtor's exclusive period to file and obtain acceptances of a Plan, apparently in contemplation of filing its own Plan, the Official Unsecured Creditors' Committee (hereinafter referred to as "the Committee") has taken an increasingly active role in the case. Concomitantly, the activities and apparent interest of Park in this matter became increasingly fainter.

Although it was unsuccessful in its efforts to shorten the exclusivity period, that period expired in June 1986, with no apparent effort on the part of the Debtor to extend the period or to present a Plan. On or about July 23, 1986, the Committee entered into an agreement with two of the inter-related Plaintiffs, ALLENTOWN CEMENT CO., INC. (hereinafter referred to as "Allentown") and CHESTER CEMENT CO., INC. (hereinafter referred to as "Chester"), whereby Chester would purchase virtually all of the assets of the Debtor in exchange for subordination of certain claims of Allentown to those of certain other creditors. Previously, the other Plaintiff, A.C.C. INVESTMENT CO., INC. (hereinafter referred to as "ACC"), had purchased a claim of another large creditor, First Jersey National Bank/South.

On August 11, 1986, after a hearing in which Park opposed same, represented by Lesser and Kaplin, a local firm retained to represent the Korean entities, this Court approved a comprehensive Management Agreement with Chester. This directive put the Plaintiffs virtually in control of the business. This was a precursor to our Order of December 31, 1986, in which we confirmed a Plan submitted by the Committee which featured the transfer of ownership and direction of the Debtor out of the hands of Park and the Hong Sung entities and into the hands of the Plaintiffs.

One of the difficult problems presented by the case was the resolution of a frustrated charter-hire contract entered into on behalf of the Debtor in 1986, shortly before the bankruptcy filing, between the Hong Sung Korea and the Movants and proposed intervenors, Zanperozan Shipping Co., S.A. and Perosea Shipping Co. (hereinafter referred to as "the Movants"). The Movants' vessel was loaded with 12,000 tons of dry cement and was perched at the Debtor's pier in the process of unloading when the bankruptcy was filed. Shortly thereafter, Hong Sung Korea ceased making payments to the Movants on the charter hire contract. Accordingly, the vessel was not

unloaded and it remained for an extended period at the Debtor's pier, impeding the use of that facility and running up a charter-hire bill.

On October 16, 1986, we granted permission to the Committee to institute an action in federal district court against the Movants to "arrest" the vessel. On October 27, 1986, we approved a Stipulation settling this suit, wherely the "arrest" of the vessel was lifted; the Movants received title to the cement; the Movants agreed to remove the vessel, and not to make a claim of their own against the Debtor; and the Movants were given the right to pursue any "funds or property" which Hong Sung Korea might recover from the Debtor's estate to satisfy the amount due on the charter-Hire contract, then alleged to be approaching $1 million.

On February 19, 1987, the Plaintiffs filed this Adversary proceeding against Hong Sun Korea, Hong Sung America, Park and his wife, Suhkee Park, and KOREA EXCHANGE BANK KWANGJU BRANCH, a/k/a KOREAN EXCHANGE BANK and KOREAN NATIONAL BANK (hereinafter "Korean Bank"), the latter of which was averred to have been the assignee of all Hong Sung Korea's claims against the Debtor.

On the same day, the Plaintiffs also filed an Objection to a Stipulation entered into between the Committee and all of the Defendants in this lawsuit (referred to hereinafter as "the Korean entities") on December 30, 1986, whereby the Korean entities withdrew their Objections to Confirmation of the Plan in exchange for the Committee's agreeing that the Korean entities' claims against the Debtor's estate would be allowed.

The strategy of the Plaintiffs was obviously to annihilate the claims of the Korean entities, which had apparently decided to cut their losses in this American venture and return to Korea. The Complaint contained eight Counts, seeking certain declaratory relief against Park and Hong Sung America, and disallowance or subordination of all of the Korean entities' claims to the Plaintiffs' own claims against the Debtor.

On March 30, 1987, the Clerk of this Court entered a default against all of the Defendants when they failed to respond to the Complaint in any manner. On April 1, 1987, the date originally listed for trial, the Plaintiffs requested us to enter a default judgment against the Defendants. Appearing at that hearing was a member of the firm of Lesser and Kaplin, who advised us that the Korean entities, whom they had previously represented, had ceased regular communications, and therefore the firm intended to file a motion to withdraw from the case as their counsel. We required, in an Order of April 2, 1987, that additional efforts at service of the Defendants be undertaken, allowed them until April 28, 1987, to answer, and rescheduled the hearing on the Motion for a default judgment on April 29, 1987.

On April 28, 1987, Lesser and Kaplin filed an Answer to the Complaint. Nevertheless, at the hearing on April 29, 1987, Lesser and Kaplin renewed its request to withdraw as counsel and indicated that it would withdraw its Answer, which it classified as a "protective" filing, if that firm were permitted to withdraw as counsel. The Movants also appeared at this hearing. We invited Lesser and Kaplin, the Plaintiffs, and the Movants to comment upon Lesser and Kaplin's motion to withdraw both as Counsel and their Answer.

The Movants filed a rather strange "Comment" to Lesser and Kaplin's Motion. They stated that they had supplied the information to Lesser and Kaplin to file an Answer and that they had no objection to the motion to withdraw, "as long as [they] are permitted to counter the Objection and Complaint" as to Hong Sung Korea.

After carefully considering the admonitions of *Ohntrup v. Firearms Center, Inc.*, 802 F.2d 676 (3d Cir.1986), we granted Lesser and Kaplin's Motion on May 18, 1987, believing there to be a considerable distinction between the instant matter and *Ohntrup*, due to the fact that, in *Ohntrup*, the Court of Appeals perceived that the opposing party would be prejudiced by counsel's withdrawal, which was not the case here. We heard nothing from Park or

the Korean entities at that time or since, and we reiterate that we conclude that these entities have made a strategic decision not to defend and to retreat to Korea.

The Answer filed by Lesser and Kaplin was accordingly withdrawn on May 27, 1987; the Plaintiffs moved again for entry of default judgment, on June 22, 1987; and a hearing on same was scheduled on July 14, 1987. On July 7, 1987, the Movants filed a document which they entitled a "Opposition" to the entry of judgment against Hong Sung Korea, asserting therein that they had a right to intervene in the proceeding to present a defense, but filing no actual motion to intervene in the proceeding.

On July 14, 1987, counsel for the Plaintiffs, the Movants, and the Committee appeared before us. The Committee joined the Plaintiffs in vigorously contending that the Movants' "Opposition" should be disregarded as procedurally and substantively inappropriate. The substantive considerations were based on alleged untimeliness of the Motion and an alleged lack of any real interest of the Movants in the issues raised in the Complaint.

In accordance with our statements at that hearing, we issued two Orders of July 15, 1987: (1) We entered default judgments in favor of the Plaintiffs on all counts except those against Hong Sung Korea and Korean Bank, i.e., all except Counts I and II; and (2) We granted the Movants permission to file a formal Motion to Intervene on or before July 17, 1987; to file a Brief in support of that Motion on or before July 24, 1987; to the Plaintiffs and any other interested parties to file responsive Briefs on or before July 31, 1987; and we scheduled a status conference on this case and the Objections to the Stipulation of December 30, 1986, between the Committee and the Korean entities to be held on September 3, 1987, presumably a date subsequent to when we would render our decision.

We believed it necessary to review herein the underlying facts, despite their complexity, because we believe that application of the pertinent F.R.Civ.P. 24, rendered applicable to this proceeding by Bankruptcy Rule (hereinafter referred to as "B. Rule") 7024, requires careful analysis of the factual setting in which it is applied. F.R.Civ.P. 24 provides, in pertinent part, as follows:

Rule 24. Intervention

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; and (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided as Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought....

Compliance with the procedural aspects of the Rule, F.R.Civ.P. 24(c) has, for reasons not apparent to us, proved to be a difficult undertaking for the Movants. Their initial "Comment" upon the Lesser and Kaplin withdrawal motion and their later "Opposition" to the Plaintiffs' motion for a default judgment were clearly not filings in compliance with F.R.Civ.P. 24. Their most recent Motion, including an Answer to Counts I and II of the Complaint, which state claims against Hong Sung Korea and Korean Bank, are certainly much closer to what the Rule 24(c) contemplates

than their previous pleadings. However, we note that intervention assumes that the intervenor will, in some capacity, become an actual party to the case, *see generally* 3B J. MOORE, ¶ 24.16, at 24–174 to 24–184 (3d ed. 1987). The Movants' Answer is prepared as if they were either standing in the shoes of Hong Sung Korea or standing somewhere on the sidelines of the action rooting for Hong Sung Korea. We believe that, to intervene, the Movants themselves must become parties in the capacity in which they intend to act, in this case as additional defendants. Therefore, when we ultimately determine that they may intervene, we order that they shall be added as defendants and named as such in the caption.

■ The Movants' procedural shortcomings should not, however, be decisive against them. Wright and Miller state that the Rule "is to be given a liberal construction," and cite to the decision of the Supreme Court in *Missouri-Kansas Pipe Line Co. v. United States,* 312 U.S. 502, 505, 61 S.Ct. 666, 667, 85 L.Ed.2d 975 (1941), for the principle that "the public interest may require that intervention be allowed wholly outside of the rule." 7C C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1904, at 238 (2d ed. 1986).

It has been held, in the following passage in a decision by our local Court of Appeals, that there are three criteria which must be satisfied to determine whether a party should be permitted to intervene in an action as of right, pursuant to F.R. Civ.P. 24(a):

> The question whether [the movants] were entitled to intervene of right depended on their satisfying the district court in three respects: first, that they had a sufficient interest in the matter, and that their interest would be affected by the disposition; second, that their interest was not adequately represented by the existing parties; and third, that their application was timely. *Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501, 504 (3d Cir.1976), *cert. denied sub nom. Fire Officers Union v. Pennsylvania,*

426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976).

*See also, e.g., In re Devault Mfg. Co.,* 14 B.R. 536, 539 (E.D.Pa.1981).

■ We would, however, further observe that we are inclined to weigh these requirements in the fashion suggested by Judge Friendly in *United States v. Hooker Chemical & Plastics Corp.,* 749 F.2d 968 (2d Cir.1984). That court suggested that a pragmatic approach to the Rule, indicating that the various prerequisites for intervention are not bright lines, but ranges because

> not all "interests" are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness. Application of the Rule requires that this components be read not discretely, but together. *Id.* at 983.

Thus, a showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. *Id.* Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention. *Id.*

The issue of "adequate representation" shines like a beacon in favor of allowing the Movants a right to intervene here. The Korean entities have obviously made a conscious decision not to defend, and the Plaintiffs are obviously attempting to take full advantage of this by virtually wiping out their interests.

Our Court of Appeals has recently reiterated its holding that "[a]s a general matter, this court does not favor default judgments and in a close case, doubts should be resolved in favor of ... reaching the merits." *DeBueno v. Castro,* 822 F.2d 416, 420 (3d Cir.1987). *See also, e.g., In re Juil, Inc.,* 52 B.R. 343, 349 (Bankr.E.D.Pa.1985); and *In re Penn Screw & Machine Works, Inc.,* 48 B.R. 138, 139–40 (Bankr.E.D.Pa. 1985).

We must express little concern for the Korean entities, as exemplified by our entry of default judgments on the six Counts other than Counts I and II of the Com-

plaint against them, because it appears to us that they have made a conscious decision not to defend. However, certainly no such decision has been made by the Movants, and we must be very careful to confine the impact of the conscious decision of the Korean entities not to defend to the interests of those entities. It is manifestly clear that those entities will make no effort to defend. Hence, it is entirely up to the Movants to assert any defense which will be made in this action. We could hardly conceive of a stronger case for establishment of the second of the three *Rizzo* prerequisites.

The Plaintiffs have argued that the third element—timeliness—should bar this Motion. Addressing this specific element at length, the *Rizzo* court recites the pertinent considerations as follows:

> The Eighth Circuit recently summarized several factors which ought to inform the district court's discretion in determining whether a motion to intervene is timely under "all the circumstances":
> [H]ow far the proceedings have gone when the movant seeks to intervene, *NAACP v. New York, supra,* 413 U.S. [345] at 367–368, 93 S.Ct. 2591 [at 2603–04] [37 L.Ed.2 648]; *Iowa State University Research Foundation v. Honeywell, Inc.,* 459 F.2d 447, 449 (8th Cir.1982), [2] prejudice which resultant delay might cause to other parties, *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1125–1126 (5th Cir.), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *Kozak v. Wells,* 278 F.2d [104] at 109 [ (8th Cir.1960) ], and [3] the reason for the delay, *Iowa State University Research Foundation v. Honeywell, Inc., supra,* 459 F.2d at 449.

> *Nevilles v. EEOC,* 511 F.2d 303, 305 (8th Cir.1975). 530 F.2d at 506.

*See also, e.g., Devault, supra,* 14 B.R. at 540.

Contrary to the Plaintiffs' contentions, we believe that these considerations cut in favor of the Movants here and that, while the Movants certainly could have proceeded more vigilantly, the procedural status of the matter renders the unfair prejudice of allowing intervention *de minimis.* The Plaintiffs have been aware of the Movants' interest and possible desire to defend at least since May 5, 1987, when the Movants filed their "Comments" to the motion of Lesser and Kaplin to withdraw as the Defendants' counsel. The Movants had a right to rely on Lesser and Kaplin's Answer and defense until the Answer was withdrawn on May 27, 1987. The only period in which delay would be attributable to the Movants was therefore from May 27, 1987, to July 7, 1987, when the Movants filed their "Objections" to the default judgment, and their struggles thereafter to put their defense into the proper pleadings.

The quantum of the delay was therefore short. The proceedings have not really gotten very far, as the efforts of the Plaintiffs have most been directed at convincing the court that the Defendants were properly served and attempting the remove Lesser and Kaplin as an impediment to the entry of a default judgment against them. We do not consider it unfair prejudice to the Plaintiffs to require them to prove up the merits of the claims which they are pursuing rather than relying upon a default as a basis for prevailing against the Defendants.

The approach to which the *Hooker* court and we subscribe can be exemplified by comparing the facts and results of *Rizzo* and *Devault* on the issue of timeliness. In both of these cases, the interveners first pressed their motion *subsequent* to the entry of judgment. In *Rizzo,* the court evaluated the defense presented by the original defendants as adequate, and the interveners' position as a mere disagreement with the propriety of the settlement. In *Devault,* meanwhile, counsel for the original defendants had actually tried the case in what the court believed was negligent fashion. Thus, considering that the element of lack of adequate representation was stronger in *Devault* than in *Rizzo,* the element of timeliness was found absent in *Rizzo,* but present in *Devault.*

Here, the Movants have not waited until after judgment to seek intervention, and

are thus proceeding more diligently than the proposed interveners in either *Rizzo* or *Devault.* The lack of representation is far more acute here than in either *Rizzo* or *Devault.* Clearly, then, timeliness in itself should not serve as a basis for denial of the instant motion pursuant to the *Hooker* reasoning.

The final prerequisite which the *Rizzo* case indicates must be present to allow intervention per Rule 24(a) is a "sufficient interest in the subject matter" of the movant with that of the action into which intervention is sought. Picking up an argument made by the Committee to us on July 14, 1987, the Plaintiffs argue that the Movants have no interest in this matter at all because they are simply a creditor of a creditor (Hong Sung Korea) of the Debtor, and litigation over such an indirect interest should not tie up the distribution to direct creditors which will ensue if the intervention is allowed and trial is necessary. The Plaintiffs also advance the following syllogism. On April 21, 1986, Hong Sung Korea allegedly assigned its "compensation equivalent to charterage" to Korean Bank. Korean Bank failed to file a Proof of Claim against the Debtor. Therefore, argue the Plaintiffs, the potential claims of Hong Sung Korea against the Debtor, which the movants seek to defend, are non-existent.

Our research of the "interest" issue in Rule 24(a) causes us to turn to a decision of our prolific predecessor, former Chief Judge Emil F. Goldhaber, in *In re David M. Hunt Construction Co.,* 3 B.R. 256 (Bankr.E.D.Pa.1980), for guidance. In the course of that Opinion, Judge Goldhaber properly observed that the appellate courts have not been able to establish a helpful definition of the "interest" of a proposed intervener which must be established to render it appropriate to allow that party to intervene. Illustrative is said to be the Supreme Court's decision in *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), where it is said that "[w]hat is obviously meant there is a significantly protectable interest." 400 U.S. at 531, 91 S.Ct. at 542–43. Judge Goldhaber further cited to a New York decision's interpretation that the interest

" 'must be significant, must be direct rather than contingent, and must be based on a right which belongs to the proposed intervener rather than to an existing party to the suit.' " *Hunt, supra,* 3 B.R. at 258, quoting *In re Penn Central Commercial Paper Litigation,* 62 F.R.D. 341, 346 (S.D. N.Y.1974), *aff'd sub nom. Shulman v. Goldman, Sachs & Co.,* 515 F.2d 505 (2d Cir.1975).

Judge Goldhaber rejected such definitions, stating that they are not of much practical help to the courts in determining in any given case whether the interest asserted is sufficient to warrant intervention of right. Rather, he suggested that a better approach would be an examination of the asserted interest in the light of the policies behind Rule 24. 3 B.R. at 258.

Judge Goldhaber's policy-oriented approach to the interpretation of the interest requirement was also observed by the District of Columbia Court of Appeals in *Nuesse v. Camp,* 385 F.2d 694 (D.C.Cir. 1967). That Court stated the "interest" test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 700.

In reiterating this view in *Smuck v. Hobson,* 408 F.2d 175, 178 (D.C.Cir.1969), the same court stated: "The effort to extract substance from the conclusory phrase 'interest' or 'legally protectable interest' is of limited promise." The court further states as follows:

But in the context of intervention the question is not whether a lawsuit should be begun, but whether already initiated litigation should be extended to include additional parties. The 1966 amendments to Rule 24(a) have facilitated this, the true inquiry, by eliminating the temptation or need for tangential expeditions in search of "property" or someone "bound by a judgment." It would be unfortunate to allow the inquiry to be led once again astray by a myopic fixation upon "interest." Rather, as Judge Leventhal recently concluded for this Court,

"[A] more instructive approach is to let our construction be guided by the policies beyind the 'interest' requirement. ... [T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."

The decision whether intervention of right is warranted thus involves an accommodation between two potentially conflicting goals; to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending. Since this task will depend upon the contours of the particular controversy, general rules and past decisions cannot provide uniformly dependable guides. *Id.* at 179 (footnotes omitted).

■ The Court of Appeals was concerned with the implication that its view of the interest requirement means that an "interest" in the controversy should or can be read out of the rule. 408 F.2d at 179. That Court stated that the requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention. *Id.* If barriers are needed to limit extension of the right to intervene, the criteria of practical harm to the applicant and the adequacy of representation by others are best suited to the task. 408 F.2d at 180.

The Supreme Court has stated that the applicant's "interest" in the litigation need not be an outright ownership interest in the disputed property nor even a primary role in the disputed transaction, so long as the outcome will significantly affect the claimant's interests. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1969), which suggests a broader focus than is set forth in *Donaldson.*

The reasoning of Judge Goldhaber, in *Hunt,* and in the foregoing cases, is totally consistent with the analysis presented by Moore. *See* 3B J. MOORE, *supra,* ¶ 24.-07[2], at 24–54 to 24–62. It has also been

expressly followed elsewhere in *In re Larkham,* 27 B.R. 859 (Bankr.D.Vt.1983).

We can now return to the facts of the instant case, and apply this policy-oriented approach in determining the interest of the Movants here. What the Movants seek to gain from their intervention, and hence their "interest" in this litigation, is the right to pursue funds from the Debtor's estate which may be due to Hong Sung Korea and, in turn, to it. We not not agree with the Committee that this is simply a claim of a creditor against a creditor of the estate. The agreement that the Movants could pursue their claim against the Debtor's estate was one of the specific benefits which the Movants were given in consideration of their agreement to remove their vessel from the Debtor's pier on October 27, 1986. The acquiescence of the Movants with this agreement pursuant to which the vessel was removed was of great benefit to both the Committee and the Plaintiffs at the time. Now that the vessel is gone, it is unseemly to hear from the mouths of the Committee and the Plaintiffs that the Movants are just a garden-variety creditor which gained no special status from the Stipulation of October 27, 1986.

We also cannot place conclusive weight on the syllogism offered by the Plaintiffs. The Committee's Stipulation with the Korean entities of December 30, 1986, by which it was agreed that their claims, including those of Hong Sung Korea and Korean Bank, were to be allowed arguably *requires* allowance of those claims, whether Korean Bank filed a Proof of Claim or not. The Committee should not be permitted to relieve itself from this bargain, which at the time it was made was important to it to obtain Confirmation of the Plan, just because the Korean entities have departed. Nor should the Committee or the Plaintiffs be permitted to attain the same result through the medium of this lawsuit. Finally, the assignment of claims of Hong Sung Korea to Korean Bank of April 21, 1986, is somewhat less than clearly worded, and may or may not have any impact on the later Stipulation of October 27, 1986.

We view the defense of the Movants as an attempt to claim "a particular ... fund as to which ownership or other rights are disputed," 3B J. MOORE, ¶ 24.07[2], at 24–55, wherein "the right to intervene is usually apparent." *Id.* This was the same context of the claim in *Hunt,* wherein a subcontractor claimed an interest in the same fund which the Debtor's Trustee sought to recover from the general contractor. Also, in *Larkham,* the intervener sought recovery from a common property and, as such, in view of the specific facts of the case in which the policy of intervention would be served, the "interest requirement" was held to be present.

We therefore conclude that the "policy" test for determining the "interest" of a proposed intervener, as enunciated by Judge Goldhaber in *Hunt,* results in the conclusion that the Movants have a strong potential interest in the controversy between the Plaintiffs and Hong Sung Korea.

Returning to Judge Friendly's pragmatic, weighing-of-elements approach enunciated in *Hooker,* we are totally convinced that intervention pursuant to Rule 24(a) is warranted. A slight degree of untimeliness is clearly outweighed by a potentially classic interest and a tremendous lack of otherwise adequate representation of that potential interest if intervention of the Movants were denied.

Two other observations are appropriate. First, assuming *arguendo* that intervention of right could not be allowed, the Movants also request that they be permitted to intervene pursuant to Rule 24(b). In order to satisfy the requirements of this rule, the interest of the proposed intervener need not be related to the property or transaction in issue, but merely "have a question of law or fact in common with it." Clearly, the Movants could clear this threshold. We do observe that the requirement of timeliness is somewhat more strictly construed in a 24(b) motion than in a 24(a) motion. 7C C. WRIGHT & A. MILLER, *supra,* § 1916, at 424. However, we do not consider the purported untimeliness of the Movants sufficiently serious to require denial of intervention on this ground for purposes of Rule 24(b), either. Thus, we would permit the Movants to alternatively intervene on the basis of Rule 24(b).[1]

Secondly, we believe that our holding that Rule 24 must be construed pragmatically and permissively is totally consistent with our view on standing, which is that "it [is] just to accord any party expending the time and resources to raise a claim the opportunity for a disposition on a less technical basis." *In re Morrison,* 69 B.R. 586, 589 (Bankr.E.D.Pa.1987). *See also In re United Church of the Ministers of God,* 74 B.R. 271, 276 (Bankr.E.D.Pa.1987); and *In re Young,* 70 B.R. 968, 970–71 (Bankr.E.D. Pa.1987).[2]

**1.** We also note that the pragmatic approach to analysis of Rule 24 is supported by a thoughtful law-review article suggesting that Rule 24(a) be abolished, and that all intervention be permissive in G. Shreve, *Questioning Intervention of Right—Toward a New Methodology of Decisionmaking,* 74 NW.U.L.REV. 894 (1980).

**2.** There is one other, totally meritless issue raised by the Plaintiffs. Appended to their last Brief is an Affidavit from their counsel stating that he had called the Secretary of the Commonwealth of Pennsylvania and been advised that neither of the Movants had filed a certificate of authority to transact business in Pennsylvania. Thus, the Plaintiffs argue that the Movants could not intervene, pursuant to 15 P.S. § 2014, which request such registration in order to "maintain any action" in the Pennsylvania courts.

However, this statutory provision expressly states that failure to comply with its provisions "shall not prevent a corporation from defending any action in any court of this Commonwealth." The Movants are intervening as *defendants* and hence would appear to be "defending" this action. Furthermore, the Movants could register at any time during the pendency of this action and avoid the proscription of 15 P.S. § 2014. *See Empire Excavating Co. v. Moret Development Corp.,* 370 F.Supp. 824 (W.D.Pa.1974). *See also* Annotation, *Compliance after Commencement of Action as Affecting Application of Statute Denying Acess to Courts or Invalidating Contracts Where Corporation Fails to Comply with Regulatory Statute,* 6 A.L.R.3d 316, 331–38 (1966); and Note, *Legal Consequences of Failure to Comply with Domestication Statutes,* 110 U.PA.L.REV. 241, 266 (1961). Hence, there is no cause to deny this Motion on this basis, even assuming that the Plaintiffs properly introduced this issue into the record, which we hold that the mere appendage of the Affidavit of Plaintiffs' counsel to their Brief failed to accomplish.

Having decided to grant the Movants' Motion, we are proceeding to add them as Defendants in the case caption. We are also concerned about the prospect of delay effected by our action. We shall therefore set forth in the Order a pre-trial Order, subject to possible revision at the status conference scheduled on on September 3, 1987.

An Order consistent with the foregoing shall be entered by us.