**Louis H. GROSS, Lillian C. Gross and Marvin Kowit, Co-Partners, trading as Gross & Kowit**

v.

**STEREO COMPONENT SYSTEMS, INC., Appellant.**

No. 82–1351.

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 1983.

Decided Feb. 18, 1983.

Richard D. Solo (argued), Gary W. Lee, Solo, Padova & Lisi, Philadelphia, Pa., for appellees.

Michael J. Temin (argued), Diane J. Sigmund, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellant.

Before WEIS, SLOVITER and BECKER, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

This is an appeal from the district court's denial of appellant's motion to set aside a default judgment entered against it for failure to timely answer the complaint. Because no prejudice accrued to the plaintiff, a potentially meritorious defense was available to the defendant, and defendant's conduct in failing to timely answer was not willful, we vacate the order and remand for further proceedings.

I.

The complaint in this diversity action was filed on March 17, 1982 in the United States District Court for the Eastern District of Pennsylvania by Gross & Kowit, a Pennsylvania partnership, seeking to recover from defendant Stereo Component Systems, Inc. (SCS), a Massachusetts corporation, $24,056.25 plus interest, costs, and attorneys' fees allegedly due it by defendant, the lessee of its property in Pennsauken, New Jersey. No answer was filed by April 12,

1982, the due date. On April 13, 1982, at the request of plaintiff's counsel, the clerk of the district court entered a default judgment in the amount requested for failure to answer. Promptly after learning this, SCS filed a Motion to Set Aside Default Judgment under Federal Rules of Civil Procedure 55(b), 55(c) and 60(b).[1] SCS alleged that the failure to timely file an answer resulted from excusable neglect and that Gross & Kowit had not been prejudiced by the delay. SCS also asserted that it had several meritorious defenses to Gross & Kowit's claim; the most important of these was the claim that the assignment of the Pennsauken lease by order of a bankruptcy court, over SCS' objection, terminated its liability on the lease.

The affidavits attached to the Motion to Set Aside Default Judgment set forth the following facts which are essentially undisputed. Diane J. Sigmund, an attorney with the Philadelphia law firm of Wolf, Block, Schorr & Solis-Cohen, had been acting as local counsel for SCS in a proceeding initiated by Brendern Enterprises, Inc. (Brendern), SCS' assignee of the leasehold in question, under Chapter 11 of the Bankruptcy Code in the Eastern District of Pennsylvania. The bankruptcy court approved the assignment of the lease from Brendern to Robert Lockwood or his nominee over the objection of SCS. The bankruptcy court order required Lockwood to pay all past due rents upon assignment but the bankruptcy judge refused to decide whether the assignment would relieve SCS of any further liability on the lease. Lockwood's nominee, Brookline Corp., which took possession of the leasehold premises, failed to meet its obligations and in turn filed for protection under Chapter 11.

On December 2, 1981 Gross & Kowit's counsel, Richard D. Solo, wrote Sigmund demanding payment by SCS of $15,006.57 on the lease, composed of rent and additional obligations that either Brendern or Brookline had failed to pay, and damage to the premises done by Brookline. Solo further stated that his instructions were to attempt to resolve the matter amicably and to file a complaint only if no settlement was forthcoming. Sigmund transmitted this letter to John J. Griffin, of the Boston firm of Rackemann, Sawyer & Brewster, general counsel for SCS. Griffin did not authorize her to engage in settlement negotiations and Sigmund did not respond to Solo's letter.

On February 9, 1982 Solo wrote Sigmund again. In this letter he corrected Gross & Kowit's damage claim to $24,056.25, by including certain additional rent. Solo stated that he took the failure to respond to his previous letter as an indication that there would be no settlement negotiations. Therefore, he continued, Gross & Kowit would be compelled to proceed to suit. Sigmund transmitted this letter to Griffin, but again gave no response to Solo.

---

1. Fed.R.Civ.P. 55, as pertinent, provides as follows:

   Rule 55. Default

   (a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

   (b) Judgment. Judgment by default may be entered as follows:

   (1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if he has been defaulted for failure to appear and if he is not an infant or incompetent person.

   .　.　.　.　.

   (c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

   Fed.R.Civ.P. 60(b), as pertinent, provides as follows:

   Rule 60. Relief from Judgment or Order

   . . . .

   (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .

On March 15, 1982 an associate of Solo telephoned Sigmund to inform her that the complaint against SCS was about to be filed and to find out whether she would accept service. Sigmund said that she was not authorized to accept service. The complaint was filed on March 17, 1982 and received by SCS on March 22, 1982. SCS immediately mailed it to Griffin; it was received in Griffin's office on March 23, 1982. Griffin, who was on vacation, did not see the complaint until March 29, 1982. He then forwarded the complaint to Sigmund but apparently did not enclose a cover letter with the complaint or any other instruction as to how she was to proceed.

Sigmund received the complaint on April 5, 1982. Over the next several days she attempted to telephone Griffin in order to ascertain whether he wanted her to handle the case and, if so, when service of the complaint had been effected. Griffin was unavailable. Sigmund then wrote Griffin on April 8, 1982, asking the same questions. That letter was received by Griffin's office on April 12, 1982 but because Griffin was away from the office he did not see the letter until, at the earliest, April 14, 1982.

On April 7, 1982 Solo had written Sigmund advising her that the complaint had been served, that the answer would soon be overdue, that his client would tolerate no further delay, and that he intended to seek the entry of a default judgment unless a timely answer was filed. Sigmund apparently received this letter on the morning of April 12, 1982, the last day for a timely filed answer. Sigmund immediately telephoned Solo, related her difficulties in reaching Griffin and her doubt as to whether she was authorized to represent SCS in this matter, and told Solo that she would get back to him as soon as she was able to reach Griffin. Sigmund also asked when the answer was due. Solo answered that he did not know and that the associate who had the information was not yet in that morning.

Sigmund's affidavit states that "[s]he at all times believed that [Solo] would afford her the opportunity to reach Mr. Griffin before taking further action." Solo denies having so implied, and points to his letter of April 7 as making clear that no further delay would be tolerated. There was no further communication between Solo and Sigmund until well after the entry of the default judgment. Sigmund again unsuccessfully attempted to contact Griffin on April 12.

The district court denied the motion to set aside the judgment. The court concluded that the failure to answer was not due to excusable neglect primarily because Sigmund had failed to check the public record as to the date of service of the complaint and failed to contact SCS to find out when the complaint had been served. The court explicitly refused to reach the issue of whether SCS had a meritorious defense. The court did not consider whether any prejudice had accrued to Gross & Kowit from the delay and did not evaluate the possibility of sanctions less severe than a default judgment.

## II.

This court has recently held that three factors should be evaluated in considering a motion to reopen a default judgment under Fed.R.Civ.P. 60(b)—first, whether the plaintiff will be prejudiced; second, whether the defendant has a meritorious defense; and third, whether culpable conduct of the defendant led to the default. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir.1982). We have also observed, in a factually analogous situation, that the district court should consider whether lesser sanctions would better serve the interests of justice. *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir.1982) (dismissal of complaint because of failure to timely obtain local counsel).

We will consider the three *Feliciano* factors seriatim. Before doing so, however, we reiterate that as a general matter this court does not favor defaults and that in a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir.1982).

## A.

Plaintiff does not claim that it would be prejudiced by the opening of the default judgment. Specifically plaintiff does not suggest that "its ability to pursue the claim has been hindered since the entry of the default judgment," by loss of evidence or otherwise. *See Feliciano,* 691 F.2d at 657. This factor, therefore, favors setting aside the default judgment.

## B.

SCS urges that it has a meritorious defense available to it. It claims that since Brendern served as debtor-in-possession during the proceedings in the bankruptcy court, with the concomitant power to either assume or reject any unexpired lease of the debtor subject to the court's approval, *see* 11 U.S.C. § 365(a) (Supp. V 1981), it could only assume the lease after paying the past due rent or providing adequate assurance that it would promptly do so, and after providing adequate assurance of future performance under the lease. *See* 11 U.S.C. § 365(b)(1) (Supp. V 1981); *see generally* Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code,* 64 Minn.L.Rev. 341 (1980). Once the debtor-in-possession has properly assumed an unexpired lease under sections 365(a) and (b), it may assign the lease, provided again that adequate assurance of future performance (by the new lessee) has been provided. *See* 11 U.S.C. § 365(f)(1) and (2) (Supp. V 1981). After the lease has been assigned, the debtor-in-possession and the debtor's estate are not liable for any breach of the lease by the new lessee. *See* 11 U.S.C. § 365(k) (Supp. V 1981).

At the hearing before the bankruptcy judge, SCS objected to the proposed assignment on the ground that Lockwood had not provided adequate assurance of future performance. Counsel for Gross & Kowit did not comment on the matter substantively, but merely observed that his clients were away and that he had no authority to approve the transaction. The bankruptcy court approved the assignment nonetheless. SCS' objection proved to be prescient: the lease was assigned to Lockwood's nominee, Brookline Corp., which in turn filed for protection under Chapter 11 some fourteen months later.

SCS proposes to defend this action, if given the opportunity to do so, essentially on the ground that it is shielded from liability on the lease because the lease was assigned with the approval of the bankruptcy court. There are at least three aspects to this argument. First, SCS contends that since Brendern, under section 365(k), is shielded from any further liability once it assigns the lease, then SCS should likewise be shielded and that only the new assignee should be liable. Second, SCS argues that since the bankruptcy court found that Lockwood had provided adequate assurance of future performance despite SCS' objection that the assurance was inadequate and that no assignment should be approved, SCS should not be liable for the assignee's breach of the lease. Third, SCS argues that the bankruptcy court order explicitly required Lockwood to pay all past due rents at the time of the assignment, unless he and the landlord agreed otherwise. Since a part of Gross & Kowit's damages here consists of rents unpaid by Brendern before its Chapter 11 filing, it is obvious that Lockwood did not pay all of the past due rents. Therefore, SCS asserts, Gross & Kowit could have rejected the assumption and assignment of the lease and its failure to do so estops it from claiming damages now.

We do not decide the validity of SCS' arguments. The parties have cited to no authority delineating the position of an original lessee, like SCS, whose assignee enters reorganization and eventually reassigns the lease over its (SCS') strenuous objections to another assignee which subsequently also enters reorganization. The district court did not reach the legal issue. We are not prepared at this time to say that the defense is facially unmeritorious.

## C.

Finally we must consider whether the failure to timely answer by counsel for SCS was culpable. In this context culpable con-

duct means actions taken willfully or in bad faith. *Feliciano,* 691 F.2d at 657.

We do not think that the record supports an inference of willfulness or bad faith conduct on the part of SCS or its counsel. Certainly there was a serious breakdown in communication between Griffin in Boston and Sigmund in Philadelphia. However Sigmund was actively attempting to contact Griffin throughout the period during which the time to answer was expiring and the default judgment was being entered. No willfulness is mirrored in the record. *See Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d at 343. In addition we note that the appellee agrees that there was no willful conduct here; in its brief the appellee characterizes the record as "demonstrat[ing] gross—*almost* willfull—neglect." Brief for Appellee at 11 (emphasis added).

### III.

Accordingly, we conclude that all three of the *Feliciano* factors favor the opening of the default judgment. We emphasize, however, that the entry of a default judgment for marginal failure to comply with the time requirements imposed by the Rules, as in this situation, must be distinguished from dismissals or other sanctions imposed by the district courts for willful violation of court rules and orders, contumacious conduct or intentional delay.

For the reasons set forth above, we will vacate the order of the district court refusing to set aside the default judgment and remand with directions that the district court do so. The district court may, in its discretion, consider whether less' drastic sanctions should be imposed. *Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d at 344. Costs are to be assessed against appellant.