**In re Joanne WELLS, a/k/a Joanne Wells–Smith, t/a Computer Auto Sales, Computer Auto Sales, Ltd., Debtor.**

**Michael J. TAMARKIN, Plaintiff,**

**v.**

**Joanne WELLS, a/k/a Joanne Wells–Smith, t/a Computer Auto Sales, Computer Auto Sales, Ltd., Defendant.**

**Bankruptcy No. 86–01575T.
Adv. No. 87–0547.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 27, 1988.

Stephen Gibble, Shirk, Reist, Wagenseller and Shirk, Lititz, Pa., for plaintiff.

James Clymer, Clymer & Covelans, Lancaster, Pa., for defendant.

James R. Leonard, Jr., Lancaster, Pa., Trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Defendant Joanne Wells ("defendant") has filed this motion to vacate an August 12, 1987 order which declared nondischargeable a debt owed by defendant to plaintiff Michael J. Tamarkin ("plaintiff"). The order was entered after defendant failed to file an answer within an ambiguous extended answer period. We find that defendant's failure to answer constituted excusable neglect, that plaintiff will not be substantially prejudiced if the judgment is opened and that defendant has a potentially meritorious defense. Accordingly, we grant the motion to vacate.

The underlying complaint in the instant case alleges that an officer of defendant's auto sales business misrepresented to plaintiff that the business would sell a 1974 Mercedes–Benz 450 SLC to plaintiff for $15,200.00 plus associated transfer costs. Plaintiff was unable to pick up the vehicle after transmitting payment, he alleges, because the vehicle was not available for sale. Plaintiff filed suit in state court, won an arbitration award, and had it reduced to judgment. These events, contend plaintiff, render the debt non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (B) and § 523(a)(4).

After plaintiff filed the instant complaint, the parties informally agreed that defendant could have an additional period of time within which to answer. Defendant's counsel testified that opposing counsel agreed to extend that deadline for an additional 45 days from the date on which the complaint was received. By this calculation, the answer was due on *August 3rd*. The parties do not dispute that plaintiff's counsel sent a letter to defendant's counsel in which he confirmed an extension period running until *July 30th*. Defendant's counsel testified that he received the letter but did not note the discrepancy between the date on his telephone notes (August 3rd) and the date listed in the letter (July 30th).

On August 4th, plaintiff filed a certification of no response and on August 12th we entered on order declaring that the obligation to plaintiff was non-dischargeable. On August 6th, plaintiff filed an answer. The answer was not brought to the attention of this Court on the date on which we signed the order granting plaintiff relief. Both parties have briefed the issue and have agreed, at the hearing, that we may consider as evidence the official court docket and pleadings.

Our starting point is Rule 60(b)(1)[1] of the Federal Rules of Civil Procedure "Rule 60(b)," which provides that we may grant relief from judgment for "... mistake, inadvertence, surprise or excusable neglect." Defendant's counsel alleges that his failure to file a timely response was the result of excusable neglect. We must consider three factors in evaluating defendant's motion: (1) whether the default occurred as a result of defendant's culpable conduct; (2) whether plaintiff will be prejudiced if the default is lifted, and (3) whether defendant has a meritorious defense. *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 419–20 (3d Cir.1987). *Accord Earle Industries, Inc.*

---

1. Rule 60(b) is incorporated into the Bankruptcy Rules at N.B.R. 9024.

*v. C-Way Enterprises, Inc. (In re Earle Industries)*, 67 B.R. 822, 824 (Bankr.E.D. Pa.1986).

■ The parties fail to pinpoint the concept of excusable neglect. Plaintiff relies on *In re Gem Rail Corp.*, 12 B.R. 929 (Bankr.E.D.Pa.1981), suggesting that it establishes a definition which excludes from the category of "excusable neglect" those cases in which the delay was caused by events within a person's reasonable control. *See* Plaintiff's Memorandum, p. 5. We doubt that *Gem Rail* established any such inflexible definition. Even if it did, subsequent Third Circuit cases point to a far more flexible approach.

It is interesting to trace the Third Circuit's development of the excusable neglect standard. In the most recent tier of cases, the Third Circuit started with the basic proposition that the requisite culpable conduct involves "willfulness or bad faith." *Feliciano v. Reliant Tooling Co., Ltd.* 691 F.2d 653 (3d Cir.1982). In *Feliciano*, a party was reluctant to take action; the party was British and was "puzzled" about an unusual form of process. *Id.* at 658. The court found a lack of bad faith. The *Feliciano* standard of willfulness was reiterated a year later. *Gross v. Stereo Component Systems*, 700 F.2d 120 (3d Cir. 1983). In *Gross*, the court found a serious breakdown in communications, but since the defaulted party had actively tried to contact the other party throughout the period during which the answer time was expiring, *id.* at 124, the court found excusable neglect.

The standard was broadened in *Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir.1984), in which the court said that willfulness and bad faith:

> ... are not talismanic incantations which alone resolve the issues on appeal. These are simply terms to guide the district court by expressing this Court's preference for avoiding default judgments where the circumstances do not justify such a result.

*Id.* at 1183. The *Hritz* court continued, noting that "(a)ppropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated." *Id.* Culpable conduct sufficient to defeat a 60(b) motion can include knowing acts *and* reckless acts. *Id.*

The Third Circuit recently broke new ground in its interpretation of excusable neglect.[2] *Consolidated Freightways Corp. of Delaware v. Larson*, 827 F.2d 916 (3d Cir.1987), *U.S. cert. den.* 108 S.Ct. 762 (1987). The *Larson* court rejected the lower court holding that no "excusable neglect" occurred simply because counsel was delayed by events *within* his control. 827 F.2d 916, 919. The court explained "(t)here is a quantitative distinction between inadvertence that occurs despite counsel's affirmative efforts to comply and inadvertence which results from counsel's lack of diligence." *Id.* at 919. In *Larson*, counsel erroneously listed the wrong district on the notice of appeal, and proceeded to file it in the wrong district. By the time the error was detected and the notice forwarded to the correct district, the appeal period had passed. *Id.* at 917. The court explained that "... the type of human error here involved, though certainly avoidable, is neither readily foreseeable nor capable of anticipation by counsel." *Id.* at

---

**2.** *Larson* interpreted Rule 4(a)(5) of the Federal Rules of Appellate Procedure ("F.R.A.P.") which provides that a court may, upon a showing of "excusable neglect" or "good cause" extend the time for filing a notice of appeal. *Larson*, however, has been cited by at least one other court as setting the perimeters for defining "excusable neglect" in a motion filed under Rule 60(b) of the Federal Rules of Civil Procedure. *See Committee v. Doemling (In re Speciality Plastics, Inc.)*, 85 B.R. 32, 33–34 (W.D.Pa.1988). We see no reason to reject the *Larson* analysis simply because it arose in a Rule 4(a)(5) context. In-

deed, the standard of "excusable neglect" is more strict when reviewing requests to extend appeal periods. *In re W & L Associates, Inc.*, 74 B.R. 681, 683 (Bankr.E.D.Pa.1987) (interpreting N.B.R. 8002(c), which, like F.R.A.P. 4(a)(5), sets appeal periods). Courts are more indulgent in Rule 60(b) motions because of the concern that parties get their day in court. *Id.* at 684. Thus, we are left with the conclusion that we could justify a standard *more* liberal than that espoused in *Larson* when we review Rule 60(b) motions. In this case, however, we need not do so.

919. A stricter definition of excusable neglect might deter "incompetence or callous disregard for the rules," but "... the susceptibility to human error is not readily capable of regulatory control." *Id.* at 920.

*Larson* is consistent with the "flexible" approach that this Court has long espoused. *In re Hinote*, 13 B.R. 874, 876 (Bankr.E.D.Pa.1981). It is also consistent with those cases in which the court fails to find excusable neglect because explanation for the inaction is either non-existent or weak. *See e.g., Lepkowski v. U.S. Dept. of Treasury*, 804 F.2d 1310 (D.C.Cir.1986) (counsel failed to file a response to a motion and offered no explanation). *See also Boyertown Data Systems, Inc. v. Tucci (In re Tucci)*, 81 B.R. 320, 18 C.B.C.2d 283 (Bankr.E.D.Pa.1988) (not a 60(b) motion, but discussing a New York case in which the failure to act over a long period of time was unexplained and weighed against the exercise of equitable powers); *In re Hinote*, 13 B.R. 874, 876 (new counsel hired after deadline missed but no explanation for his delay).

There is no doubt that other districts require that parties make a more stringent showing on a Rule 60(b) motion. There is a considerable body of case law which suggests that carelessness does not rise to the level of excusable neglect, and that forgetfulness or the press of other business will not create Rule 60(b) excusable neglect. *See e.g., In re Uiterwyk Corp.*, 57 B.R. 166 (Bankr.M.D.Fla.1986). This position may also have been reflected in the early bankruptcy decisions from the Third Circuit. *See e.g., Grant Builders, Inc. v. DiPietro (In re DiPietro)*, 20 B.R. 539 (Bankr.W.D. Pa.1982) (court did not find excusable neglect when attorney alleged that the summons and notice of trial arrived while he was on vacation and that, by inadvertence or mistake, he failed to appear).

After *Larson*, however, courts in the Third Circuit must recognize the possibility of human error and decline to penalize counsel when those errors are explained. *Larson* has most recently been interpreted by the District Court for the Western District of Pennsylvania. *Committee v. Doemling (In re Speciality Plastics, Inc.)*, 85 B.R. 32 (W.D.Pa.1988). In *Speciality Plastics*, counsel failed to attend a scheduled hearing. The bankruptcy court denied defendant's motion to vacate. The district court found that the bankruptcy court had failed to address the factors enumerated in *Larson*. The analysis in *Speciality Plastics* is apropos in this case:

> In the present case, the ease of manufacture and verification of the diary error is only one factor and it alone is not determinative. Aside from a great deal of invective and innuendo from plaintiff concerning defendant's dilatory responses in this case, there is nothing to indicate that counsel's failure to appear was anything but inadvertent. Indeed, the Bankruptcy Court did not find counsel to be unworthy of credence or his excuse to be facile and not credible. Counsel gained no advantage by his order and caused plaintiffs no prejudice. There is no indication that counsel has missed other scheduled appearances but to the contrary the record indicates that this was an isolated event.

*Id.*

> Interpreting *Larson*, the court stated: "In *Larson* the most mundane of errors, a typist's error which caused a notice of appeal to be filed in the wrong district, was held to be excusable neglect. *Larson* made clear that it is the simple, everyday error—an unnoticed typo, a mistaken diary entry—which is virtually inevitable for every lawyer regardless of the level of competence or diligence he brings to a case ..."

*Id.* at 33–34. This type of interpretation is consistent with the long standing Third Circuit preference that cases be decided on the merits because the court does not favor defaults. *See e.g., Gross v. Stereo Component Systems*, 700 F.2d 120, 122.

Courts within the Third Circuit have suggested a variety of factors that may be considered to guide the court in a decision involving excusable neglect. As the *Larson* court explained:

> Although every case must be examined on an ad hoc basis and it is impossible to

compose an exhaustive list of factors relevant to a determination of whether excusable neglect has occurred, a thoughtful analysis of this issue in a particular context will, at a minimum, require a weighing and balancing of the following factors: (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure, *Campbell v. Bowlin,* 724 F.2d 484 (5th Cir.1984) (failure to read rules of procedure not excusable); (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, *Airline Pilots v. Executive Airlines, Inc.,* 569 F.2d 1174 (1st Cir.1978) (mistake in diarying counsel's calendar not excusable); (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence, *United States v. Commonwealth of Virginia,* 508 F.Supp 187 (E.D. Va.1981) (failure to arrange coverage during attorney's vacation which encompassed end of appeal period not excusable); (4) whether the inadvertence reflects a complete lack of diligence, *Reinsurance Co. of America, Inc. v. Administratia,* 808 F.2d 1249 (7th Cir.1987); or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance. 827 F.2d 916 (3d Cir.1987). *See also In re Hinote,* 13 B.R. 874, 876 (courts can consider good faith of party seeking relief, whether a reasonable basis for non-compliance exists, the interests of speedy administration and whether clients should be penalized for the sins of counsel).

■ We now evaluate the instant case. Defendant's counsel did not ignore rules of procedure. Plaintiff suggests that a formal request for extension should have been presented to the court. Clearly, that was one option. But we have always encouraged parties to agree to informal deadline extensions without wasting court time and client funds. Once confirmed by letter and, ideally, copied to the court, the parties

can proceed. This process encourages the collegiality so important to the reasonable resolution of disputes. Plaintiff agreed to this "informal" extension and confirmed the extension in writing. He is now estopped from attacking the procedure under which he had previously agreed to act.

Defendant's excuse was not "incapable of verification by the court." Defendant's attorney testified credibly as to the circumstances causing this snafu. We have all skimmed letters too quickly. This delay did not result from counsel's failure to provide for a "readily foreseeable consequence." As the *Larson* court noted, ". . . the type of human error here involved although certainly unavoidable, is neither readily foreseeable nor capable of anticipation . . ." 827 F.2d 916, 919. Counsel may have been less than perfectly diligent, but he did not exhibit a complete lack of diligence.[3] Counsel's testimony has satisfied us that he acted promptly and in good faith. We will not punish this clearly non-culpable defendant for a minor error committed by counsel. *See e.g., In re Juil, Inc.,* 52 B.R. 343 (Bankr.E.D.Pa.1985); *In re Hinote,* 13 B.R. 874.

We are also concerned that we were not aware that defendant's answer had been filed prior to the signing of the August 12th order. It is possible that we would not have entered the default judgment had we known of the pendency of the answer. Under these circumstances, we find excusable neglect.

■ The second step in our analysis is determining whether the defendant has a meritorious defense. As former Chief Judge Goldhaber noted, "(a) meritorious defense is presumptively established when the 'allegations of defendant's answer, if established at trial would constitute a complete defense to the action.'" *In re Earle Industries, Inc.,* 67 B.R. 822, 824, *citing In re Juil,* 52 B.R. 343, 347, *quoting Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir. 1984).

---

3. Counsel mailed the answer out on August 3rd. It did not reach the court until August 6th, three (3) days after the date on which counsel thought

it was due. Defendant's case would have been stronger had the answer been filed on August 3rd.

Defendant alleges that Mr. Blessing's actions were without her authorization, knowledge or consent, and that she made no misrepresentations. *See* Answer, para. 8. If proven, these and her other allegations could constitute a defense to the § 523(a)(2)(A) count of the complaint.

A winning case under § 523(a)(2)(B) requires proof of reasonable reliance on the debtor's materially false written statement. *In re Koch,* 83 B.R. 898, 904, 17 B.C.D. 449 (Bankr.E.D.Pa.1988). Again, the above facts, coupled with our failure to note any written statement, would constitute a defense.

■ Finally, we must consider plaintiff's § 523(a)(4) claim. The existence of a fiduciary relationship is a prerequisite to a finding of § 523(a)(4) liability for fraud or defalcation. *Martin v. Martin (In re Krank),* 84 B.R. 372, 376 (Bankr.E.D.Pa. 1988). Defendant alleges that Mr. Blessing's actions were totally outside of the scope of his employment, an argument that could defeat the existence of a fiduciary relationship.

Neither side has suggested that plaintiff will suffer substantial prejudice if this case is reopened. There is nothing to suggest that plaintiff's ability to proceed has been hindered by loss of evidence or in any other manner. Thus, this factor does not prevent us from setting aside the default judgment. *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 123.

Today's ruling does not stand ·for the proposition that we will vacate every default judgment entered after counsel has missed an answer period. In this instance, counsel's explanation was prompt and forthright, and the other factors identified herein all mitigated in favor of trying this case on the merits.

An appropriate order follows.