**Brent JAMES, Plaintiff,**

v.

**CITY OF JERSEY CITY, Frank D'Agosta, individually and in his capacity as Detective of the City of Jersey City, Brian Anlin, individually and in his capacity as the Chief of Jersey City Police Department, John Does 1–50, Defendants.**

**No. CIV 97–2368(WHW).**

United States District Court,
D. New Jersey.

June 7, 1999.

---

17. *Id.* at 662–63.

21. Williams Decl. ¶¶ 4, 7.

Robert Levy, Maura Johnson Kimball, Scarinci & Hollenbeck, Secaucus, NJ, for Plaintiff Brent James.

Philip J. Maksikoudis, Jersey City, NJ, for Defendant Frank D'Agosta.

## OPINION

WALLS, District Judge.

This matter is before the Court on the motion of defendant Frank D'Agosta to vacate the default judgment entered against him because of allegedly improper service of process and excusable neglect. Pursuant to Fed. R. Civ.P. 78, the Court decides this motion without oral argument. Defendant's motion to vacate the default judgment is denied.

## FACTS

On August 16, 1995, plaintiff Brent James, a truck driver, delivered furniture to defendant D'Agosta's residence in Jersey City. Before plaintiff unloaded the furniture, he requested payment for both the furniture and the delivery charge, and Ms. Marvinny, defendant D'Agosta's girlfriend, gave plaintiff two checks representing these payments. After plaintiff unloaded the furniture, Ms. Marvinny was not satisfied with the condition of the furniture and demanded a refund. Plaintiff returned the check for the furniture to Ms. Marvinny and reloaded the furniture. Ms. Marvinny insisted that plaintiff also return the check for the delivery fee. Plaintiff refused to do so because it represented payment for the delivery service he rendered and it was independent of the cost of the furniture. Mr. James also explained that under the contract for the purchase of the furniture, the delivery fee was non-refundable.

Ms. Marvinny then telephoned defendant D'Agosta who arrived shortly thereafter at the residence. Upon his arrival, D'Agosta identified himself as a Jersey City police officer. Mr. James contacted his employer who instructed him not to return the check for the delivery fee and explained to Mr. D'Agosta that the delivery fee was non-refundable. Mr. D'Agosta radioed for a patrol car and then hand-cuffed, arrested, and detained plaintiff on the front lawn of the residence. When the patrol car arrived, Mr. D'Agosta detained Mr. James in the car for thirty-five minutes until plaintiff returned the check for the delivery charge. Mr. James was discharged from his employment within two weeks of this incident, and as a result, lost his home and automobile. On May 7, 1997, plaintiff filed a complaint in this Court against D'Agosta, Brian Anlin (Chief of Jersey City Police Department ("J.C.P.D.")), and the City of Jersey City pursuant to 42 U.S.C. §§ 1983, 1983, and 1988 for violations of his Fourth, Fifth, and Fourteenth Amendment rights, interference with his civil rights, violations of the New Jersey Law Against Discrimination ("NJLAD"), unlawful arrest, false imprisonment, battery, and failure to properly hire and train. Defendants City of Jersey City and Brian Anlin answered the complaint on June 23, 1997. Although D'Agosta's attorney requested an extension of time to answer and was granted the extension through a July 15, 1997 Stipulation, D'Agosta failed to answer the complaint. On April 13, 1998, default was entered against D'Agosta, and on June 25, 1998, this Court granted plaintiff's motion for a default judgment of $17,500 against him. Defendant D'Agosta now moves to vacate the default judgment against him pursuant to Fed. R.Civ.P. 60(b) because of allegedly improper service of process and excusable neglect. D'Agosta claims that he was never served a copy of the complaint and only learned about the action through the law offices of the City of Jersey City. When he learned about the action, he retained the services of an attorney, Elise DiNardo, who entered into a July 15, 1997 Stipulation with plaintiff's counsel

extending the time to answer until July 30, 1997, but never filed an answer. According to D'Agosta, he inquired into the status of the case sometime in April or May, 1998, and DiNardo indicated that she was withdrawing from the case because the City of Jersey City refused to pay her retainer. D'Agosta claims that he never received any notice of the default entered against him or a copy of the default judgment. D'Agosta asserts that Ms. DiNardo refused to return D'Agosta's file to him unless he signed a release holding her harmless.

## DISCUSSION

### A. Standard for Vacating a Default Judgment

▮ Fed.R.Civ.P. 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

The decision to set aside a default judgment is left "primarily to the discretion of the district court." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir.1984)(citing *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir.1951)). The Third Circuit has mandated that a district court "consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under

Rule 55(c) or a default judgment under Rule 60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." *$55,518.05 in U.S. Currency,* 728 F.2d at 195 (citing *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122 (3d Cir.1983); *Feliciano v. Reliant Tooling Company, Ltd.,* 691 F.2d 653, 656 (3d Cir.1982); *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982)). "[D]oubtful cases [are] to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *$55,518.05 in U.S. Currency,* 728 F.2d at 195 (quoting *Tozer,* 189 F.2d at 245). As the Third Circuit has stated, "there would be no point in setting aside the default judgment" if the defendant could not demonstrate the possibility of his success on the merits. *$55,518.05 in U.S. Currency,* 728 F.2d at 195. In addition, a party who seeks to set aside a judgment under Rule 60(b)(6) must demonstrate that absent relief, an extreme and unexpected hardship will result. *Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3d Cir.1977). Relief under Rule 60(b)(6) is "extraordinary, and special circumstances must justify granting relief under it." *Moolenaar v. Government of Virgin Islands,* 822 F.2d 1342, 1346 (3d Cir.1987) (quoting *Page v. Schweiker,* 786 F.2d 150, 158 (3d Cir.1986)).

### B. Whether Defendant D'Agosta Was Served with the Complaint

D'Agosta moves to vacate the default judgment because of improper service of process or excusable neglect. D'Agosta claims that he was never properly served with the complaint and that he never signed a waiver of service. D'Agosta acknowledges, however, that he received a copy of the complaint. Plaintiff asserts that the summons and complaint were served upon defendant D'Agosta via certified mail, return receipt requested at the J.C.P.D. Plaintiff has submitted a copy of the return receipt card which bears an illegible signature. Before plaintiff served defendant D'Agosta, he contacted the Chief Officer of the J.C.P.D. who instructed him that the police department would accept ser-

vice on behalf of Mr. D'Agosta. Plaintiff also contends that he has provided Mr. D'Agosta with notice of the pre-trial conference, the entry of default, and order of default judgment at his home and/or at the police department via certified mail, regular mail, and/or return receipt requested. Plaintiff has provided the Court with copies of the receipts for certified mail and the signed return receipt cards. Plaintiff also asserts that D'Agosta's allegation of improper service is late and his inaction in this matter is unjustified.

Pursuant to Fed.R.Civ.P. 4(e), service may be effected upon an individual in a judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Plaintiff claims that he properly served D'Agosta pursuant to Fed.R.Civ.P. 4(e)(2) because he delivered the summons and the complaint to an authorized agent for D'Agosta at the J.C.P.D. via certified mail, return receipt requested. The return receipt card was executed by a member of the J.C.P.D. on June 3, 1997, and on June 4, 1997, Mr. D'Agosta filed a request for counsel with the Office of the Chief of Police naming Elise DiNardo as his attorney.

■ There is nothing in the record to suggest that D'Agosta appointed or authorized any member of the J.C.P.D. to serve as his agent for receipt of process. That the Chief Officer informed plaintiff's counsel that the Department would accept service for D'Agosta is inapposite. The "agent" referred to in Fed.R.Civ.P. 4(e)(2) must be an agent authorized by law or appointed by the defendant.

Because plaintiff does not assert that a member of the J.C.P.D. is authorized by law to accept service for any other member of the department and there is nothing in the record to suggest that D'Agosta appointed anyone as his agent, service was not made in accordance with Fed.R.Civ.P. 4(e)(2).

Plaintiff contends that even if service was not made in accordance with the Federal Rules of Civil Procedure, the default judgment against D'Agosta should not be vacated because he received the summons and complaint, and the day after the J.C.P.D. was served, D'Agosta requested counsel. D'Agosta turned the summons and complaint over to his attorney who then arranged for an extension of time to answer with plaintiff's counsel. Under these circumstances, plaintiff asserts that the due process considerations which motivate the service requirements have been met.

■ There is merit to plaintiff's argument. The personal jurisdiction requirement and the service rules are designed to protect the defendant's individual liberty interest arising from the due process clause. *Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492, 501 (1982). The service rules were fashioned to provide defendants with notice and an opportunity to defend themselves:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–315, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950) (citations omitted).

D'Agosta has acknowledged that he received the summons and complaint. He requested counsel on June 4, 1997, the day after the summons and complaint were served on the J.C.P.D. He turned the summons and complaint over to his attorney who then requested and was granted an extension of time to answer. The defect in service here was purely technical and did not prejudice D'Agosta. Because D'Agosta received "notice reasonably calculated ... to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections," *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873, he was served in a manner that satisfied due process.

## C. Whether Defendant D'Agosta's Failure to Answer Is Excusable

D'Agosta argues that the default judgment should be set aside because his failure to answer was due to "mistake, inadvertence. ., or excusable neglect." Fed.R.Civ.P. 60(b)(1). D'Agosta claims that his failure to respond to the complaint was due to the neglect of his attorney, Ms. DiNardo who failed to file an answer and did not communicate with him. According to D'Agosta, he learned that Ms. DiNardo had not filed an Answer in April or May of 1998 when he inquired into the case.

■■■■ D'Agosta's failure to answer is not due to mistake, inadvertence, or excusable neglect within the meaning of Rule 60(b)(1). His failure is due to inaction on both his part and the part of his attorney, Ms. DiNardo. This inaction does not constitute excusable neglect. "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. Because of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered to constitute 'neglect.'" *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 394, 113 S.Ct. 1489, 1497–1498, 123 L.Ed.2d 74 (1993)(citing *Klapprott v. United States,* 335 U.S. 601, 613–614, 336 U.S. 942, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949)). D'Agosta's inaction is not attributable to inadvertence, mistake, or excusable neglect. He was aware that an action had been filed against him, he retained counsel, his counsel requested an extension but never filed an answer, and D'Agosta did not inquire into the status of his case until at least nine months after the answer was due. After default was entered against him in April, 1998, once against D'Agosta did nothing. Plaintiff's motion for default judgment against D'Agosta was granted in June, 1998, and D'Agosta did nothing in this action until he moved to vacate the judgment four months later.

## D. Whether the Default Judgment Should be Vacated

■■ D'Agosta has not presented a viable reason under Rule 60(b) to vacate the default judgment against him. However, in its determination of whether to vacate the judgment, the Court must consider whether the plaintiff will be prejudiced, whether the defendant has a meritorious defense, and whether the default was the result of the defendant's culpable conduct. Plaintiff argues that he would be "severely prejudiced" if the default judgment is vacated because he has "vigorously proceeded with this action, despite Defendant's disregard for the proceedings," and will continue to be harmed if the judgment is vacated. (Pl.'s Br. at 8.) Despite plaintiff's protestation, the prejudice to him if the judgment is vacated will be minimal. Plaintiff has not claimed that his " 'ability to pursue the claim has been hindered since the entry of default judgment,' by loss of evidence or otherwise." *Gross v. Stereo Component Systems, Inc.,* 700 F.2d at 123 (citing *Feliciano v. Reliant Tooling Co.,* 691 F.2d at 656).

D'Agosta has not presented a meritorious defense. Aside from conclusory statements that he has presented a meritorious defense, D'Agosta's only defense is that he "faced ... what he perceived to be a theft of services by plaintiff, Brent James," and that as a police officer he "had a duty to place [James] under arrest." (Def.'s Br. at 6.) This defense has no merit because D'Agosta had no probable cause to arrest James. The contract for the purchase of furniture provided that the delivery fee was non-refundable. D'Agosta had no reason to believe that James was involved in the theft of any services; rather, he and

Ms. Marvinny were engaged in the theft of James's services.

Finally, the default was the result of D'Agosta's culpable conduct. Default was not entered against D'Agosta until almost nine months after his answer was due. D'Agosta has not presented any evidence that he inquired once into the status of his case during that time or that he made any effort to ensure that an answer had been filed on his behalf or that his attorney continued to represent him. D'Agosta's inaction and disregard for this action constitute culpable conduct.

Because D'Agosta has not presented a viable reason to vacate the default judgment against him, has not offered a meritorious defense to the allegations in the complaint, and the default judgment was the result of his culpable conduct, his motion to vacate the default judgment against him pursuant to Fed.R.Civ.P. 60(b) is denied.

### CONCLUSION

Defendant D'Agosta's motion to vacate the default judgment entered against him is denied.

SO ORDERED.