**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3205
_____

CHRISTOPHER H. WEST,
Appellant

v.

MARK EMIG; JEFFREY CARROTHERS
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-13-cv-02103)
U.S. Magistrate Judge: Hon. Jennifer L. Hall
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 4, 2023
_____

Before: SHWARTZ, CHUNG, and MCKEE, <u>Circuit Judges</u>.

(Filed:  December 5, 2023)
_____

OPINION*
_____

SHWARTZ, <u>Circuit Judge</u>.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Christopher West appeals the District Court's judgment in favor of Defendants Mark Emig and Jeffrey Carrothers, former employees of the Delaware Department of Correction, on his Eighth Amendment claim. Because Defendants did not violate a clearly established constitutional right, they are entitled to qualified immunity, and we will affirm.

I

While incarcerated at Howard R. Young Correctional Institution ("HRYCI") in 2011 and 2012, West ate inedible objects on at least seventeen occasions, resulting in eight hospital visits. West was eventually placed on psychological close observation ("PCO") for several weeks where he was monitored for twenty-four hours per day. Nevertheless, West managed to eat foam from his suicide-resistant mattress, resulting in another trip to the hospital. At some point after that incident, West's mattress was removed from his cell for "at most, approximately one month."[1] West v. Emig, No. 13-2103, 2022 WL 13944580, at *2 (D. Del. Oct. 24, 2022). The record shows that the removal of the mattress was done at the direction of mental health professionals. [2]

_____

[1] The District Court deemed West's testimony that he was deprived of a mattress for longer than one month not entirely credible because he also admitted that he lacked awareness and hallucinated at that time and his memories were "fuzzy." West, No. 13-2103, 2022 WL 13944580, at *2 (citing SA 143, 146, 149). He also testified that he could reconstruct the events at HRYCI only after reviewing records from his state court criminal case. Id. (citing SA 146, 149).
[2] Emig, the then-Deputy Warden, testified that, although there is no documentation of this directive "99% of the time" mental health professionals are responsible for placing

2

In April 2013, West was transferred to James T. Vaughn Correctional Center ("JTVCC"), where he continued to swallow inedible objects. As a result, West was placed on PCO and his mattress was removed from his cell in the mornings and returned in the evenings. According to Carrothers, the then-Security Superintendent, it is JTVCC's practice to remove the mattresses of PCO inmates during daytime hours to prevent them from destroying the mattress, using it to block the observation windows, or harming themselves. Carrothers further testified that the removal was not punitive but was based on West's PCO status.

West sued Emig and Carrothers asserting that they violated his Eighth Amendment rights by depriving him of a mattress. After a one-day bench trial, the District Court found that (1) at HRYCI, West's mattress was removed from his cell for, at most, approximately one month upon the recommendation of mental health professionals; (2) Emig knew that West was without a mattress at HRYCI for at least some period of time; (3) at JTVCC, West's mattress was removed from his cell for sixteen hours during the day, but returned to him at night, pursuant to JTVCC practice for PCO inmates; and (4) the removal of West's mattress at HRYCI and JTVCC was not punitive. West, No. 13-2103, 2022 WL 13944580, at *1-3.

Based on these findings, the District Court held that Emig was entitled to qualified

---

inmates on PCO status and taking related actions, like removing mattresses, unless mental health professionals are unavailable, in which case medical or security personnel may act in their place. SA 128.

immunity because West did not identify any cases as of 2011 or 2012 holding that "prison officials cannot deprive a prisoner of a mattress at night for a period of less than one month on the advice of mental health professionals and with the intent and purpose of protecting the prisoner." Id. at *4. Similarly, the Court concluded that Carrothers was entitled to qualified immunity because it was not clearly established in 2013 that "prison officials cannot remove a mattress from a prisoner's cell during the daytime hours for legitimate penological reasons." Id. The Court also held that West did not establish an Eighth Amendment violation because the mattress removals were intended to protect West's well-being and were not unreasonable. Id. Based on these conclusions, the Court entered judgment in favor of Emig and Carrothers.

West appeals.[3]

II[4]

---

[3] Defendants argue that the appeal should be dismissed because West's brief lacks citations to the record. Appellee Br. at 17-18. Submitting a brief without record citations is inconsistent with Federal Rule of Appellate Procedure 28(a)(8) and Third Circuit Local Appellate Rule 28.3(c). Here, because it is clear which facts West references and we have the entire record before us, we will not deem his failure to comply with these rules as a waiver of the right to review, particularly given our Court's preference to resolve cases on their merits. See Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 122 (3d Cir. 1983) (citation omitted).

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. "When reviewing a judgment entered after a bench trial, we exercise plenary review over the District Court's conclusions of law and review the District Court's findings of fact for clear error." CG v. Pennsylvania Dept. of Educ., 734 F.3d 229, 234 (3d Cir. 2013). A finding of fact is clearly erroneous where "although there is evidence to support it, the reviewing court on the entire evidence is left with the

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity was properly granted, we conduct a two-prong inquiry, asking whether (1) the conduct violates a constitutional right; and (2) the right was clearly established when it was allegedly violated. Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021). Courts may begin their inquiry with either prong, and an answer in the negative to either will entitle the official to qualified immunity. Id.

In this case, we focus only on the clearly established prong. To determine whether a right was clearly established, we first "define the right allegedly violated at the appropriate level of specificity" to "frame the right in light of the specific context of the case, not as a broad general proposition." Id. (internal quotation marks and citations omitted). We then ask "whether that right was clearly established at the time of its alleged violation." Id. (internal quotation marks and citations omitted). We answer this question by looking first to "factually analogous Supreme Court precedent, as well as binding opinions from our own Court," and then examining whether there is a "robust

---

definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 394-95 (1948)). Great deference is given to a district court's credibility findings because the trial judge is in a "superior[] . . . position to make determinations of credibility." Id. at 574.

consensus of persuasive authority in the Courts of Appeals." Id. (first citing Fields v. City of Phila., 862 F.3d 353, 361 (3d Cir. 2017); and then quoting L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 248 (3d Cir. 2016). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." City of Tahlequah v. Bond, 595 U.S. 9, 12 (2021) (per curiam) (internal quotation marks and citations omitted).

Because qualified immunity requires courts to analyze "the specific conduct of each [official]," Williams v. City of York, 967 F.3d 252, 257 (3d Cir. 2020) (internal quotation marks and citation omitted), we will consider the allegations against Emig and Carrothers separately.

A

Like the District Court, we define the right that Emig allegedly violated as the right of a prisoner not to be deprived of a mattress for a period of at most one month on the advice of mental health professionals and with the purpose of protecting the prisoner from, for example, swallowing parts of his mattress.[5]

---

[5] The District Court did not clearly err in finding that mental health professionals directed the removal of West's mattress at HRYCI. While Emig testified that there was no documentation of the mental health professionals' request to remove the mattress, he explained that the removal nevertheless would have been at the direction of mental health staff because they determine what restrictions are imposed on PCO inmates. The finding is further supported by West's Behavior Management Plan, which was completed and

6

We next ask whether this right was clearly established at the time of Emig's conduct in 2011 and 2012. West has not identified, and we have not found, any precedent from either the Supreme Court or our Court as of the time of the alleged deprivation that made it "sufficiently clear that a reasonable official would understand that" removing West's mattress for at most one month at the direction of mental health staff and with the purpose of protecting him from swallowing parts of his mattress would violate the Eighth Amendment. Peroza-Benitez, 994 F.3d at 165 (citation omitted). In fact, our case law leaves open the possibility that conditions that prevent sleep may not amount to an Eighth Amendment violation where, as here, there is a legitimate penological justification. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (recognizing that the "unnecessary and wanton infliction of pain" prohibited under the Eighth Amendment include "those that are totally without penological justification." (quotation marks and citations omitted)); Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372 (3d Cir. 2019) (same); Clark v. Coupe, 55 F.4th 167, 188 (3d Cir. 2022) (acknowledging that where there are "exigent circumstances and legitimate penological

---

signed by numerous "mental health staff" and which (1) summarizes West's history of self-injurious behaviors and (2) identifies the plans to correct these actions, including placing West on various levels of PCO and providing various incentives, one of which appears to be receiving a "mattress." SA98. Thus, there was ample evidence to permit the District Court to conclude that the mental health staff ordered the removal of West's mattress at HRYCI. See Anderson, 470 U.S. at 574 (holding that a factfinder's choice between two permissible views of the evidence cannot be clearly erroneous).

7

justifications," a clearly established right may not have been violated).[6]  While we hold

here that the right was not clearly established given the penological justifications, this

conclusion is heavily dependent on the particular circumstances of this case (e.g. where

officials were confronted with a previously unencountered, intractable, serious threat to

an inmate's health, and the physical effect, if any was not readily apparent).

Furthermore, West has not identified any persuasive authority from other circuits existing

at the time of the conduct showing that such a right was clearly established.[7]  Clark, 55

F.4th at 188.  Nonetheless,  we are not holding that there is no clearly established Eighth

Amendment right not to be deprived of sleep for an extended period of time for non-

penological reasons.  Cf. Hutto v. Finney, 437 U.S. 678, 687 (1978) (conditions that

"might be tolerable for a few days" may be "intolerably cruel for weeks or months");

Mammana, 934 F.3d at 374 (prisoner stated Eighth Amendment claim where he alleged

---

[6] Although Mammana and Clark were decided after the events here, they rely on well-established case law that predated these events.  See Mammana, 934 F.3d at 372 n.23 (quoting Wilson v. Seiter, 501 U.S. 294, 308 (1991) (White, J., concurring)); see also Clark, 55 F.4th at 188 (citing Wilson, 501 U.S. at 301-02).

[7] West cites Harper v. Showers for the proposition that "sleep undoubtedly counts as one of life's basic needs," and thus, "[c]onditions designed to prevent sleep, then, might violate the Eighth Amendment."  Appellant Br. at 12 (citing 174 F.3d 716, 720 (5th Cir. 1999)).  However, Harper is inapt because it did not involve the removal of a mattress at the direction of mental health professionals for the prisoner's protection.  Instead, the Harper court found that Harper sufficiently pled an Eighth Amendment claim based on his allegations that, following an escape attempt, he was moved on a weekly basis to "cells next to psychiatric patients who would scream, beat on metal toilets, short out the power, flood the cells, throw feces, and light fires," which "deprived him of cleanliness, sleep, and peace of mind."  174 F.3d at 717, 720.

that several "mutually enforcing" poor sleeping conditions deprived him of sleep and "caused him 'to suffer physical and psychological harm.'"). As a result, Emig is entitled to qualified immunity.

## B

As to Carrothers, the District Court appropriately defined the right as the right of a prisoner to not be deprived of a mattress during daytime hours for legitimate penological reasons, including to protect prisoners who require psychological close observation.[8] We conclude that this right was not clearly established at the time of Carrothers's conduct. West provided no Supreme Court or Circuit precedent for his position, and instead, persuasive authority supports a conclusion that daytime mattress restrictions for

---

[8] Contrary to West's arguments, the District Court found that West's mattress was removed during the daytime hours pursuant to JTVCC's practice for PCO inmates, and that this practice was not to punish West, but for "legitimate penological reasons, including West's safety." West, No. 13-2103, 2022 WL 13944580, at *3. This finding is supported by Carrothers's testimony that mental health and medical staff were responsible for overseeing an inmate on PCO status and that JTVCC's procedure for PCO inmates was to remove the mattress from their cell after breakfast and to return it in the evening to prevent inmates from destroying the mattress or using it to harm themselves or block windows.

9

legitimate penological reasons do not constitute an Eighth Amendment violation.[9]

Therefore, Carrothers is entitled to qualified immunity. [10]

### III

For the foregoing reasons, we will affirm the District Court's judgment.[11]

---

[9] Alex v. Stalder, 225 F. App'x 313, 313 (5th Cir. 2007) ("[A]llegations regarding the taking of his mattress from his cell during the daytime do not give rise to any Eighth Amendment violation."); Mestre v. Wagner, 2012 WL 300724, at *4 (E.D. Pa. Jan. 31, 2012) ("[D]enying a prisoner a mattress [during day-time hours] for limited time periods is not a deprivation of a minimal standard of living and does not constitute a cruel and unusual punishment."); Gannaway v. Berks Cty. Prison, 2011 WL 1196905, at *6 (E.D. Pa. Mar. 31, 2011) ("[T]he removal of [the] [p]laintiff's mattress during the day does not amount to cruel and unusual punishment.").

[10] West's argument that Carrothers was aware of the deprivation and "deliberately refuse[d] to correct the situation," Appellant Br. at 15, presupposes a constitutional violation.  Likewise, to the extent that West argues that Emig and Carrothers are both liable for the combined period of time that West was deprived of a mattress at HRYCI and JTVCC, Appellant Br. 15-16, this argument fails because Emig and Carrothers were personally involved only in the conduct that occurred at their respective jails.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that, to be liable for a constitutional violation, an individual government defendant must have been personally involved in causing the violation).

[11] We will also deny West's pro se motions.  We deny West's pro se motion to remove counsel based on the claim that he did not receive a copy of the brief filed on his behalf, ECF No. 28, because he makes no assertion that counsel failed to confer with him prior to the filing and thus the failure to provide a copy of his brief is not a sufficient basis for removing counsel.  We also deny West's pro se motion to supplement, ECF No. 29, because he is represented by counsel and hybrid representation is not permitted.  See United States v. Johnson, 899 F.3d 191, 206 (3d Cir. 2018); 3d Cir. L.A.R. 31.3 ("The rule against hybrid representation forbids a party to file a pro se brief supplementing his counseled brief.").